## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHAVONDA BROOKS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-2280** |
| **BRIAN KAHRS, ET AL.** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court in this civil-rights case are cross-motions[1] for partial summary judgment by Plaintiff Shavonda Brooks, on behalf of her minor son, A.B., and by Defendants Jefferson Parish Sheriff's Office Deputy Brian Kahrs, Jefferson Parish Sheriff's Office Records Custodian Cherie' W. Blanchard, and Jefferson Parish Sheriff Joseph P. Lopinto, III. For the reasons that follow, Brooks's motion for partial summary judgment is **DENIED** and Defendants' motion for partial summary judgment is **GRANTED**.

## I.   BACKGROUND

This case concerns alleged misconduct by the Jefferson Parish Sheriff's Office. It arises from Plaintiff Shavonda Brooks's claims that Deputy Brian Kahrs falsely arrested and used excessive force against her minor son, A.B.; that Records Custodian Cherie' Blanchard stymied Brooks's lawyers' efforts to obtain public records about the incident; and that Sheriff Lopinto failed to supervise, investigate, and "decertify"[2] Deputy Kahrs.[3] Only the limited facts strictly relevant to the pending motions follow.

---

[1] ECF No. 59; ECF No. 63.

[2] According to Brooks's operative complaint, "[d]ecertifying refers to the process by which a police department requests that the state decertify an officer of his or her state law enforcement certification to prevent the officer from being hired at other police stations." ECF No. 17 at 25 n.30.

[3] *See generally* ECF No. 17.

Minors A.B. and T.B. were selling brownies in the parking lot of a Brothers Food Mart in Metairie.[4] A store attendant asked them to leave.[5] They did not do so immediately: They had one brownie left to sell, and a customer who had just entered the store indicated he would buy it from them on his way out.[6] "Shortly after" the attendant asked A.B. and T.B. to leave, the customer left the store and bought the brownie.[7] A.B. and T.B. then left the store's parking lot and crossed the street.[8]

The attendant called the police to complain about two "kids outside the location selling candy and refusing to leave."[9] Deputy Kahrs responded to the call.[10] But Deputy Kahrs did not see A.B. or T.B. when he arrived at the store; he instead saw them as they crossed the street heading towards a strip-mall parking lot.[11] So Deputy Kahrs got into his car and followed A.B. and T.B. to the strip-mall parking lot.[12]

What follows is A.B.'s recounting of the encounter. Deputy Kahrs got out of his car, immediately drew his gun, pointed it at A.B., and told A.B. to stop.[13] A.B. complied.[14] Even so, Deputy Kahrs "violently grabbed A.B. by the sweatshirt" and

---

[4] ECF No. 59-2 at 1 ¶ 1. Because Defendants' statement of uncontested material facts in opposition to Brooks's motion for partial summary judgment does not controvert any of the properly supported facts listed in Brooks's statement of undisputed material facts, *see* ECF No. 68-1 at 1–2, the properly supported facts listed in Brooks's statement of undisputed material facts are deemed admitted for the limited purpose of the Court's consideration of Brooks's motion for partial summary judgment. *See* LOCAL CIVIL RULE 56.2; *Wimsatt v. Jaber*, No. 22-CV-1012, 2024 WL 2187872, at *2 n.10 (E.D. La. May 14, 2024) (Long, J.), *aff'd*, 2025 WL 711120 (5th Cir. Mar. 5, 2025) (per curiam).

[5] ECF No. 59-2 at 1 ¶ 3.

[6] *Id.* at ¶ 4.

[7] *Id.* at ¶ 5.

[8] *Id.* at ¶ 6.

[9] *Id.* at ¶ 7 (quotations and alterations omitted).

[10] *Id.* at ¶ 9.

[11] *Id.* at ¶¶ 10–12.

[12] *Id.* at ¶ 13.

[13] *Id.* at ¶ 16.

[14] *Id.* at ¶ 17.

"threw him on the hood of the police car."[15] Deputy Kahrs punched A.B. in the face repeatedly; checked A.B.'s pockets and found no weapons; shoved A.B. to the ground; climbed on top of A.B.'s back and choked him; and handcuffed and arrested him.[16]

For his role in that encounter, A.B. was charged with[17]—and admitted[18] to— "entry on or remaining in places or on land after being forbidden" under Section 14:63.3 of the Louisiana Revised Statutes. In relevant part, Section 14:63.3 provides:

> No person shall without authority go into or upon or remain in or upon or attempt to go into or upon or remain in or upon any structure, watercraft, or any other movable, or immovable property, which belongs to another, including public buildings and structures, ferries, and bridges, or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing, including by means of any sign hereinafter described, by any owner, lessee, or custodian of the property or by any other authorized person.

La. Stat. Ann. § 14:63.3(A)(1).

In connection with A.B.'s admission to that charge, the Jefferson Parish Juvenile Court ordered that Brooks and A.B. "cooperate fully with probation."[19] A.B. did so and completed probation about six months after his admission to the charge.[20]

Months later, Brooks's counsel sent a public-records request and three follow-up letters to the Jefferson Parish Sheriff's Office under the Louisiana Public Records Act, La. Stat. Ann. § 44:3.[21] The request sought nine sets of records, including

---

[15] *Id.* at ¶ 18.

[16] *Id.* at ¶¶ 18–24.

[17] ECF No. 63-4 at 13. A.B. was also charged with resisting an officer under Section 14:108 of the Louisiana Revised Statutes. ECF No. 63-4 at 13. But the State dismissed that charge after A.B. pleaded guilty to the "remaining after being forbidden" charge. ECF No. 63-5 at 2.

[18] ECF No. 63-5 at 2.

[19] Id.

[20] ECF No. 64-1 at ¶ 3.

[21] ECF No. 59-6 at 149–51 (request dated May 13, 2021); *id.* at 153–55 (letter dated August 10, 2021); *id.* at 157–59 (letter dated September 15, 2021); *id.* at 161–62 (letter dated February 16, 2022).

dash-camera footage, police reports, internal-affairs materials, records of disciplinary proceedings, and service-call recordings relating to the encounter.[22]

Thirteen days after Brooks's counsel's first public-records request—with the criminal proceedings against A.B. still pending[23]—the Jefferson Parish Sheriff's Office responded in writing to each of the nine requests.[24] The gist follows:

- The Jefferson Parish Sheriff's Office "cannot" release video of the encounter because "it involves pending criminal litigation."[25]

- Brooks's counsel would "need to obtain a Motion for Disclosure from Juvenile Court before the [police] report can be released" "[d]ue to a juvenile being involved."[26]

- The Jefferson Parish Sheriff's Office would not produce internal affairs complaints or records of disciplinary proceedings because "[i]ndividuals have a right to privacy and release of the complaints requested, which may or may not be substantiated, rises to an invasion of that privacy."[27]

- The Jefferson Parish Sheriff's Office made available 296 pages of "Miscellaneous Documents" in response to Plaintiff's counsel's request for "records regarding the number of arrests and/or citations issued by the Jefferson Parish Sheriff's Office" for certain charges.[28]

- The Jefferson Parish Sheriff's Office "cannot" release recordings of service calls relating to the encounter because "it involves pending criminal litigation."[29]

---

[22] *See, e.g.*, *id.* at 149–51.

[23] *See id.* (Jefferson Parish Sheriff's Office May 26, 2021 public-records response letter) *with id.* at 153 (August 10, 2021 letter from Plaintiff's counsel stating that the proceedings against A.B. "have been resolved" "[a]s of July 22, 2021").

[24] ECF No. 59-6 at 164.

[25] Id.

[26] Id.

[27] Id.

[28] Id.

[29] Id.

About two-and-a-half months after the Jefferson Parish Sheriff's Office responded in writing to each of Brooks's counsel's nine public-records requests, Brooks's counsel sent a follow-up letter about two of them.[30] That follow-up letter informed the Jefferson Parish Sheriff's Office that the criminal proceedings against A.B. "have been resolved" and renewed the two public-records requests for which the Jefferson Parish Sheriff's Office had cited pending criminal proceedings as a bar to disclosure: (1) video from the date of the encounter related to A.B. and T.B.; and (2) service-call recordings from the date of the encounter relating to A.B. and T.B.[31]

The Jefferson Parish Sheriff's Office did not respond in writing to that first follow-up letter.[32] Instead, a representative of the Jefferson Parish Sheriff's Office "informed [Brooks's counsel] by phone that the records would not be released unless [Brooks's counsel] successfully filed a motion for disclosure in juvenile court."[33]

Just over a month after the first follow-up letter, Brooks's counsel sent a second follow-up letter to the Jefferson Parish Sheriff's Office.[34] This second follow-up letter argued that counsel's public-records request "was improperly denied for multiple reasons," including that "concerns about the involvement of a juvenile are inapplicable here," and renewed the requests for video and service-call recordings.[35]

---

[30] *Id.* at 153–55.
[31] Id.
[32] *Id.* at 157.
[33] *Id.*
[34] *Id.* at 157–59.
[35] Id.

A week after that second follow-up letter, Records Custodian Cherie Blanchard responded in writing that the requested video and service-call recordings "cannot be released" under the Louisiana Public Records Act "due to it being an ongoing investigation and pending criminal litigation."[36] Blanchard did not know if there was, in fact, an ongoing investigation when she wrote this response, but Blanchard understood that the case against A.B. was still open in juvenile court.[37]

Just over four-and-a-half months after Blanchard's response, Brooks's counsel sent a third follow-up letter.[38] The letter stated that "[t]here is no pending criminal litigation against either" A.B. or T.B. and that the Jefferson Parish Sheriff's Office had "no basis . . . to continue to withhold these public records from disclosure."[39] The letter also re-urged the requests for the video and service-call recordings.[40]

Eight days after that third follow-up letter, Blanchard responded in writing that Brooks's counsel would "need to obtain a Motion for Disclosure from Juvenile Court before the report can be released" "[d]ue to . . . juveniles being involved[.]"[41]

This lawsuit followed. On behalf of her minor son A.B., Brooks brings seven causes of action arising from A.B.'s encounter with Deputy Kahrs and from her lawyers' efforts to obtain public records from the Jefferson Parish Sheriff's Office:

***First Cause of Action.*** Brooks sues Deputy Kahrs and a John Doe Defendant under 42 U.S.C. § 1983 for "unreasonable seizure and/or false arrest in violation of

---

[36] *Id.* at 166.
[37] *Id.* at 184 (transcript page 57:25), 185 (transcript age 60:2–3).
[38] *Id.* at 161–62.
[39] *Id.* at 161.
[40] *Id.* at 161–62.
[41] *Id.* at 168.

the Fourth Amendment" to the United States Constitution.[42] Among other allegations

offered in support of this Section 1983 false-arrest claim, Brooks alleges that A.B.

"did not trespass" because "A.B. left the [s]tore premises in a timely fashion[.]"[43]

***Second Cause of Action***. Brooks sues Deputy Kahrs and a John Doe

Defendant under Section 1983 for "excessive force in violation of the Fourth

Amendment" to the United States Constitution.[44] Among other allegations, Brooks

alleges that Deputy Kahrs's use of force against A.B. was excessive because (a)

Deputy Kahrs "knew the nature of any purported trespass was a minor, and not

violent, crime"; (b) Deputy Kahrs "knew that A.B. was a juvenile"; (c) Deputy Kahrs

"had received no report that either of the brownie-selling teens were armed, let alone

violent"; (d) Deputy Kahrs "never saw a weapon"; and (e) "neither teen ever posed any

threat—let alone a serious threat—of harm" to Deputy Kahrs or anyone else.[45]

***Third Cause of Action.*** Brooks sues Deputy Kahrs and a John Doe Defendant

for assault under Louisiana law.[46] She alleges that "Defendant's various actions

immediately preceding his physical assault of A.B.—including, but not limited to,

immediately aiming a gun at A.B.—constituted threats to cause A.B. injury"; that

"Defendant intended to threaten to cause physical injury to A.B., and did in fact cause

physical injury to A.B."; and that "Defendant's threat of physical injury to Plaintiff

was unreasonable, and was not justified in light of the circumstances."[47]

---

[42] ECF No. 1 at ¶¶ 72–79 (alterations omitted).
[43] *Id.* at ¶ 75.
[44] *Id.* at ¶¶ 80–91 (alterations omitted).
[45] *Id.* at ¶ 82.
[46] *Id.* at ¶¶ 92–97.
[47] *Id.* at ¶¶ 93–95.

***Fourth Cause of Action.*** Brooks sues Deputy Kahrs and a John Doe Defendant for battery under Louisiana law.[48] She alleges that "Defendant intended to use force to cause physical injury to A.B., and did in fact use force to cause injury to A.B."; and that "Defendant's use of force to cause physical injury to A.B. was unreasonable, was not justified in light of the circumstances, and was excessive."[49]

***Fifth Cause of Action.*** Brooks brings a Section 1983 claim against Sheriff Lopinto, in his official capacity, under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), for "failure to supervise, investigate, and decertify" Deputy Kahrs.[50] Brooks alleges Sheriff Lopinto "failed to investigate" Deputy Kahrs's conduct, and Sheriff Lopinto's "failure to investigate this and prior excessive force cases is part of his failure to implement proper policies and procedures regarding the use of excessive force and racial profiling."[51] Brooks's complaint does not raise a failure-to-train theory of *Monell* liability. In fact, the word "training" appears just once—in a general description of Sheriff Lopinto's status as "the principal and final policymaker of [the Jefferson Parish Sheriff's Office], responsible for hiring, firing, training, supervising, and establishing the policies, procedures, customs, and practices governing [Deputy Kahrs's] conduct while on duty."[52]

***Sixth Cause of Action.*** Brooks alleges that Sheriff Lopinto is liable on a *respondeat superior* theory under Louisiana law for failing to investigate Deputy

---

[48] *Id.* at ¶¶ 98–102.

[49] *Id.* at ¶¶ 99–100.

[50] *Id.* at ¶¶ 103–111 (alterations omitted).

[51] *Id.* at ¶¶ 107 & 108.

[52] *Id.* at ¶ 112.

Kahrs.[53] She adds that Sheriff Lopinto's "failure to supervise, investigate, and decertify officers amounts to deliberate indifference, because he was or reasonably should have been aware that this failure would result in a constitutional violation."[54]

***Seventh Cause of Action*** Brooks sues Blanchard and a John Doe Defendant for violating the Louisiana Public Records Act, LA. STAT. ANN. § 44:3.[55] She alleges that the public records her counsel sought "have not been received"; that Blanchard "did not produce the requested records within five days of [Brooks's] requests to access the public records"; and that Blanchard did not "provide [Brooks's] counsel a written estimate of the time reasonably necessary for collection, redaction, examination, or review of the request."[56] Brooks further alleges that Blanchard "(i) unreasonably delayed producing the requested records, (ii) arbitrarily and capriciously withheld the requested records, and (iii) unreasonably and arbitrarily failed to respond to the request as required by [LA. STAT. ANN. § 44:3]."[57]

Based on these allegations, Brooks seeks a declaration that Deputy Kahrs's conduct violates the Fourth and Fourteenth Amendments to the United States Constitution; compensatory damages; punitive damages; reasonable attorney's fees and costs; and "[i]njunctive relief to prevent future harm or loss of property[.]"[58]

Defendants raised qualified immunity as an affirmative defense.[59]

---

[53] *Id.* at ¶¶ 112–122.
[54] *Id.* at ¶ 119.
[55] *Id.* at ¶¶ 123–127.
[56] *Id.* at ¶¶ 125 & 126.
[57] *Id.* at ¶ 126.
[58] *Id.* at 29 (prayer).
[59] *See* ECF No. 18 at 1 ¶ I (answer to operative first amended complaint incorporating the affirmative defenses raised in the original answer); ECF No. 14 at 2 (eighth defense) (original answer

Competing motions for summary judgment followed. Brooks moves for partial summary judgment on (1) Defendants' affirmative defense of qualified immunity; and (2) her Louisiana Public Records Act claim against Blanchard.[60] Defendants oppose.[61] Defendants in turn move for partial summary judgment on (1) the Section 1983 false-arrest claim against Deputy Kahrs; (2) the *Monell* claim against Sheriff Lopinto; and (3) the Louisiana Public Records Act claim against Blanchard.[62] Brooks opposes.[63]

## II.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The movant has the initial burden to show that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmovant will bear the burden of proof at trial, the movant meets its initial burden by pointing to "an absence of evidence to support" the nonmovant's claim. *Id.* at 325. The movant "need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37

---

raising qualified immunity). No Defendant moved to dismiss based on qualified immunity; nor has any Defendant moved for summary judgment on any claim based on qualified immunity.

[60] ECF No. 59.
[61] ECF No. 68.
[62] ECF No. 63.
[63] ECF No. 64.

F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)  (first citing *Celotex*, 477 U.S. at 323; and then citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885–86 (1990)). Nor must the movant "set forth evidence when the nonmovant bears the burden of persuasion at trial," *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the movant "fails to meet this initial burden," however, "the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets its initial summary-judgment burden, however, the burden shifts to the nonmovant to "identify specific evidence in the summary judgment record demonstrating that there is a dispute of material fact concerning the essential elements of its case for which it will bear the burden of proof at trial." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021) (first citing FED. R. CIV. P. 56(a) & (e); and then citing *Celotex*, 477 U.S. at 324). "Speculative theories cannot defeat a motion for summary judgment." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citing *Little*, 37 F.3d at 1075). Nor may a nonmovant "defeat summary judgment with 'conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence.'" *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). "Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine [dispute] of material fact exists." *Id.* (citing *Little*, 37 F.3d at 1075). If the nonmovant "fails to meet this burden, the motion for summary judgment *must* be granted." *Little*, 37 F.3d at 1076 (emphasis added).

In reviewing the summary-judgment record, the Court draws all reasonable inferences in favor of the nonmovant. *See Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). And the Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## IV.   ANALYSIS

Brooks and Defendants move for partial summary judgment on assorted issues. Starting with Brooks's earlier-filed motion for partial summary judgment, the Court "review[s] each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 820, 283 (5th Cir. 2021) (quotation and citation omitted)).

### A.   Brooks's Motion for Partial Summary Judgment

Brooks moves the Court to grant partial summary judgment in her favor in two respects. Neither succeeds. First, Brooks "seeks to preclude Defendants from asserting qualified immunity as to all claims at trial" because Brooks says qualified immunity is unlawful.[64] The Court must decline Brooks's invitation to "upend qualified immunity outright"; overruling qualified immunity is "outside [the Court's] abilities." *Winder v. Gallardo*, 118 F.4th 638, 644 (5th Cir. 2024) (per curiam).

---

[64] ECF No. 59-1 at 16.

Second, Brooks contends that she is entitled to partial summary judgment on her Louisiana Public Records Act damages claim.[65] The Court disagrees, on the limited record and briefing presented.[66] Under the Louisiana Public Records Act, the Court "may award the requestor [of a public record] any actual damages proven by him to have resulted from the actions of the custodian" "[i]f the [C]ourt finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request[.]" LA. STAT. ANN. § 44:35(E)(1).

Viewing the facts and drawing all reasonable inferences in Blanchard's favor, *see Reeves*, 530 U.S. at 150, the Court denies Brooks's motion for partial summary judgment for two independent reasons. First, Brooks has not shown the absence of a genuine dispute as to the "actual damages proven . . . to have resulted" from Blanchard's actions. LA. STAT. ANN. § 44:35(E)(1). Brooks marshals no evidence of damages in support of her motion. Second, Brooks has not shown the absence of a genuine dispute as to whether Blanchard "arbitrarily or capriciously withheld" any requested record or "unreasonably or arbitrarily failed to respond to" any request. *Id.* Brooks does not elaborate on the meaning of the terms "arbitrarily," "capriciously," and "unreasonably" under the Louisiana Public Records Act, and she otherwise fails to explain with any specificity how there is no genuine dispute that Blanchard's conduct meets any of those standards. For those independent reasons, Brooks fails to

---

[65] *Id.* at 36–38; *see also id.* at 38 (citing LA. STAT. ANN. § 44:35E(1)). According to her complaint, Brooks does not seek civil penalties under Section 44:35(E)(1). *See* ECF No. 17 at ¶ 127 (Brooks's operative complaint) (requesting "injunctive relief and/or issuance of a writ of mandamus, attorneys' fees and costs, and damages, including the attorneys' fees incurred for bringing this action should the withheld records plainly contradict any of [Brooks's] claims").

[66] Brooks devotes less than three full pages of her 28-page opening brief to her Louisiana Public Records Act damages claim against Blanchard. ECF No. 59-1 at 36–38.

show that there is no genuine dispute of material fact and that she is entitled to judgment as a matter of law on her Louisiana Public Records Act damages claim.

Accordingly, the Court denies Brooks's motion for partial summary judgment and turns to Defendants' competing motion for partial summary judgment.

## B.    Defendants' Motion for Partial Summary Judgment

Defendants move the Court for partial summary judgment dismissing three of Brooks's seven claims: (1) her Section 1983 false-arrest claim against Deputy Kahrs; (2) her *Monell* claim against Sheriff Lopinto; and (3) her Louisiana Public Records Act claim against Blanchard.[67] The Court considers each challenged claim in turn.

### 1.    Section 1983 False Arrest

First, Defendants move the Court for partial summary judgment dismissing Brooks's Section 1983 false-arrest claim against Deputy Kahrs because Defendants contend that claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[68] It is.

Section 1983 "allows plaintiffs to seek damages from persons who violate their constitutional rights while acting under color of state law." *Gray v. White*, 18 F.4th 463, 467 (5th Cir. 2021). But *Heck* holds that a Section 1983 claim "is not cognizable"

---

[67] ECF No. 63 at 1.  The Court does not interpret Defendants' motion to properly request summary judgment on Brooks's assault and battery claims under *Heck*. Defendants' motion asserts that "Plaintiff's false arrest claim is barred by *Heck*"; the motion itself does not reference Brooks's assault and battery claims. *Id.* To be sure, Defendants' opening brief includes a one-paragraph (two-sentence) section entitled "the *Heck Bar* and State-Law Claims." ECF No. 63-1 at 5 (alterations omitted). But that section contains no analysis: It does not explain how the assault and battery claims—which would entail a *Heck* analysis different from the one governing the Section 1983 false-arrest claim—are barred by *Heck*. *Id.* And the section otherwise reads as if it were inadvertently included in the brief, because it references a claim for "intentional infliction of emotional distress" that Brooks has not brought, and because Defendants elsewhere—in other sections of their opening brief, *see, e.g., id.* at 6–7, and in their reply brief, *see* ECF No. 70 at 1–2—ask the Court to dismiss only Brooks's "claim for false arrest" under *Heck*—not Brooks's assault and battery claims too.

[68] ECF No. 63-1 at 4–7.

if  success on it "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence," and the plaintiff has not "prov[ed] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87.

That latter requirement is "known as the 'favorable termination rule.'" *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006) (quoting *Sappington v. Bartee*, 195 F.3d 234, 235 (5th Cir. 1999)). It prevents using Section 1983 "to collaterally attack a prior criminal proceeding, out of concern for finality and consistency." *Aucoin v. Cupil*, 958 F.3d 379, 380–81 (5th Cir. 2020) (citing *Ballard*, 444 F.3d at 397). Without it, Section 1983 "could be used as a tool effectively to reverse state convictions without recourse to more proper means, such as habeas corpus." *Gray*, 18 F.4th at 467.

 Deciding if "an individual claim is barred by *Heck* is . . . 'analytical and fact-intensive.'" *Id.* (quoting *Bush*, 513 F.3d at 497). Under *Heck*, "[a] court may bar only those claims whose success 'require[s] negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction.'" *Id.* (quoting *Bush*, 513 F.3d at 497). "In other words, if the conviction and successful § 1983 claim can co-exist, *Heck* is no bar bar to suit." *Williams v. McDonough*, No. 22-40281, 2023 WL 2733443, at *2 (5th Cir. Mar. 31, 2023) (per curiam) (citing *Poole v. City of Shreveport*, 13 F.4th 420, 426–27 (5th Cir. 2021)).

Invoking those principles, Defendants contend that *Heck* bars Brooks's Section 1983 false-arrest claim because A.B. pleaded guilty to a "remaining after being

forbidden" charge arising from A.B.'s refusal to leave the Brothers Food Store parking lot after the attendant told him to leave.[69] Because Brooks's Section 1983 false-arrest claim would require Brooks to prove that there was no probable cause for the "remaining after forbidden" charge to which A.B. pleaded guilty, *see Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001), success on that Section 1983 false-arrest claim would "necessarily imply the invalidity" of A.B.'s conviction, *Heck*, 512 U.S. at 487.

For her part, Brooks does not dispute that success on her Section 1983 false-arrest claim would "necessarily imply the invalidity" of A.B.'s conviction for "remaining after forbidden."[70] Instead, Brooks advances three purely legal arguments against applying *Heck* to bar her Section 1983 false-arrest claim.[71] None persuades.

First, Brooks says the Court should not apply *Heck* because it is "incompatible with the original and controlling text of Section 1983."[72] The Court declines Brooks's invitation to "upend" the *Heck* doctrine; as with qualified immunity, overruling *Heck* is "outside [the Court's] abilities." *Winder*, 118 F.4th at 644; *see Wilson v. Midland Cnty.*, 116 F.4th 384, 401 (5th Cir. 2024) (en banc) (rejecting argument that *Heck*'s favorable-termination requirement clashes with Section 1983's text and explaining that "the only entities that can say otherwise are Congress and the Supreme Court").

Second, Brooks contends that *Heck* "should be considered waived" because Defendants did not raise *Heck* as an affirmative defense in their answer, and

---

[69] *Id.* at 6–7.
[70] *See generally* ECF No. 64.
[71] *Id.* at 9–15.
[72] *Id.* at 10 (alterations omitted; capitalization modified).

Defendants delayed obtaining records relating to their *Heck* argument.[73] But Brooks cites no authority supporting the proposition that a defendant "waives" a *Heck* defense by failing to raise that defense in an answer. And the Fifth Circuit has held the opposite: "A *Heck* defense[ ] . . . is not waived by failure to plead it as an affirmative defense," and the defense can even "be brought by motion at trial." *Walker v. Munsell*, 281 F. App'x 388, 389 (5th Cir. 2008) (per curiam) (citing *Watson v. New Orleans City*, 275 F.3d 46, 2001 WL 1268716, at *3 (5th Cir. Oct. 16, 2001)(per curiam)).

Third and finally, Brooks contends that *Heck* does not bar her Section 1983 false-arrest claim because A.B. completed a "diversion program."[74] Brooks says there "is no binding Fifth Circuit precedent" on whether completing a diversion program like the one A.B. completed here "triggers *Heck*." But Brooks cites no opinion of any court anywhere that has accepted her argument that completing a diversion program satisfies *Heck*'s favorable-termination rule. And in all events, still-binding Fifth Circuit precedent rejects the reasoning behind her argument: Completing a diversion program does not satisfy *Heck*'s favorable-termination requirement because defendants entering diversion programs "acknowledge responsibility for their actions," *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc), and completing a diversion program does not "affirmatively indicate that [the accused] is not guilty," *Evans v. Ball*, 168 F.3d 856, 859 (5th Cir. 1999), *abrogated on other grounds by*

---

[73] *Id.* at 12.
[74] *Id.* at 13–14.

*Castellano*, 352 F.3d at 939. Finally, for good measure, at least one Fifth Circuit panel, and district courts circuit-wide, have applied that reasoning to reject diversion-program arguments materially identical to the one Brooks makes here. *See, e.g.*, *Morris v. Mekdessie*, 768 F. App'x 299, 301–02 (5th Cir. 2019) (per curiam) (rejecting argument that *Heck* did not apply because the plaintiff completed a diversion program); *Garig v. Travis*, No. 20-CV-654, 2021 WL 2708910, at *22 (M.D. La. June 30, 2021) (same; emphasizing "the overwhelming number of cases" that support the proposition that completing a diversion program does not satisfy *Heck*'s favorable-termination requirement). Brooks's diversion-program argument here fails for essentially the same reasons the diversion-program arguments failed there.

Accordingly, because Brooks does not point to any summary-judgment evidence creating a genuine dispute as to *Heck*'s application to bar her Section 1983 false-arrest claim, and because the Court has rejected Brook's three purely legal arguments against *Heck*'s application to bar that claim, Defendants are entitled to judgment as a matter of law dismissing Brooks's Section 1983 false-arrest claim under *Heck*. So the Court grants Defendants' motion for partial summary judgment dismissing Brooks's Section 1983 false-arrest claim against Deputy Kahrs.

### 2.    *Monell*

Defendants contend that the Court should dismiss Brooks's *Monell* claim against Sheriff Lopinto because Brooks lacks evidence that any policy of Sheriff Lopinto was the "moving force" behind any constitutional violation.[75] In response,

---

[75] ECF No. 63-1 at 9–12.

Brooks does not cite summary-judgment evidence supporting *Monell* liability under the *failure-to-investigate* or the *failure-to-adopt-policy* theories she raised in her complaint.[76] Instead, she says that portions of Sheriff Lopinto's deposition testimony suffice to support "a *Monell* claim under a *failure to train* theory."[77] But that is a new—and distinct[78]—theory of *Monell* liability; it is not the *Monell* claim Brooks raised in her complaint.[79] And so it "is precisely the sort of surprise switcheroo that [Fifth Circuit] precedents forbid." *Jackson v. Gautreaux*, 3 F.4th 182, 189 (5th Cir. 2021). After all, "[i]t is well settled in [the Fifth Circuit] that [a] claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Id.* at 188 (quotation omitted). The Fifth Circuit has "repeatedly emphasized this rule." *Id.* at 188–89 (collecting cases). Because Brooks did not raise a failure-to-train *Monell* claim in her complaint—instead raising it for the first time in her summary-judgment opposition—that claim "is not properly before the [C]ourt." *Id.* (quotation omitted); *accord,* e.g., *id.* at 189 (holding that a *Monell* claim based on a sheriff's failure to train officers to deal with *mentally unstable individuals* was not properly before the court

---

[76] ECF No. 64 at 15–19.

[77] ECF No. 64 at 15–19 (emphasis added).

[78] "An unconstitutional failure to train is *not* the same as an unconstitutional failure to adopt policies; each is a distinct theory of *Monell* liability." *Buchicchio v. LeBlanc*, 656 F. Supp. 3d 643, 664 (M.D. La. 2023), *aff'd*, No. 23-30116, 2024 WL 4603272 (5th Cir. Oct. 29, 2024).

[79] Brooks's operative complaint alleges that Sheriff Lopinto "failed to investigate" Deputy Kahrs's conduct, and that Sheriff Lopinto's "failure to investigate this and prior excessive force cases is part of his failure to implement proper policies and procedures regarding the use of excessive force and racial profiling." ECF No. 17 at ¶¶ 107 & 108. The word "training" appears just once in Brooks's operative complaint, in the general description of Sheriff Lopinto's position. *Id.* at ¶ 12.

on summary judgment because the complaint alleged a different *Monell* failure-to-train claim, based on the sheriff's failure to train officers to avoid *excessive force*).

Accordingly, because Brooks's failure-to-train *Monell* claim is not properly before the Court, and because Brooks does not point to summary-judgment evidence creating a genuine dispute as to the failure-to-investigate and failure-to-adopt-policy theories she raised in her complaint, there is no genuine dispute of material fact as to the only pleaded theories of *Monell* liability. Sheriff Lopinto is therefore entitled to judgment as a matter of law on those theories. The Court grants the motion for partial summary judgment dismissing Brooks's *Monell* claim against Sheriff Lopinto.

### 3.    Louisiana Public Records Act

Defendants move for partial summary judgment dismissing Brooks's Louisiana Public Records Act claim against Blanchard on three grounds.[80] But one is jurisdictional—and dispositive: Defendants contend that the Court lacks subject-matter jurisdiction over the Louisiana Public Records Act claim against Blanchard under 28 U.S.C. § 1367(a) because the factual basis for that claim is insufficiently related to the factual basis for the Section 1983 excessive-force claim against Deputy Kahrs, which is the only claim within the Court's original subject-matter jurisdiction that will survive this opinion. Despite the scant briefing Defendants offer, the Court has an "independent obligation" to assure itself of its subject-matter jurisdiction to consider Brooks's Louisiana Public Records Act claim against Blanchard. *See FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231 (1990).

---

[80] ECF No. 63-1 at 12–14.

The Court's independent examination confirms that it lacks supplemental jurisdiction over the Louisiana Public Records Act claim.[81] Section 1367(a) grants federal district courts "supplemental jurisdiction over all . . . claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "The question under section 1367(a) is whether the supplemental claims are so related to the original claims that they . . . 'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). The question here, then, is whether Brooks's Section 1983 excessive-force claim against Deputy Kahrs—that is, Brooks's only remaining claim within the Court's original jurisdiction[82]—and Brooks's Louisiana Public Records Act claim against Blanchard "derive from a common nucleus of operative fact." *Id.* (quotation omitted).

They do not. The events underlying the Section 1983 excessive-force claim against Deputy Kahrs, on the one hand, and the Louisiana Public Records Act claim against Blanchard, on the other, are temporally and factually distinct. Temporally, the Section 1983 excessive-force claim against Deputy Kahrs arises from one encounter between A.B. and Deputy Kahrs occurring on one day in December 2020; by contrast, the Louisiana Public Records Act claim against Blanchard arises from

---

[81] Supplemental jurisdiction is the only asserted basis for subject-matter jurisdiction over the Louisiana Public Records Act claim. *See* ECF No. 17 at ¶ 15 (alleging "supplemental jurisdiction over Plaintiff's Louisiana state law claims pursuant to 28 U.S.C. § 1367").

[82] The parties do not dispute—and the Court agrees—that there is supplemental jurisdiction over Brooks's state-law assault and battery claims because those claims arise from the same "common nucleus of operative fact" as Brooks's Section 1983 excessive-force claim against Deputy Kahrs.

correspondence and at least one phone conversation between Brooks's lawyers and representatives of the Jefferson Parish Sheriff's Office spanning May 2021 to February 2022. Factually, the Section 1983 excessive-force claim against Deputy Kahrs arises from Deputy Kahrs allegedly punching, shoving, and choking A.B. during one encounter; by contrast, Brooks's Louisiana Public Records Act claim against Blanchard arises from the Jefferson Parish Sheriff's Office's alleged failure to timely and adequately respond to public-records requests made by Brooks's lawyers during an eight-month period that included assorted correspondence and at least one telephone conversation. The Public Records Act claim against Blanchard thus presents "a separate and distinct case or controversy from" the Section 1983 excessive-force claim against Deputy Kahrs; it "lies beyond the supplemental jurisdiction of this Court[.]" *Hayes v. Berthelot*, No. 24-CV-1434, 2025 WL 306364, at *2 & *3 (E.D. La. Jan. 27, 2025) (Ashe, J.) (holding that the court lacked supplemental jurisdiction over Louisiana Public Records Act claim because it did not share a common nucleus of operative fact with federal civil-rights claim, even though the plaintiff claimed that the records requested would be "key evidence" in the suit).

Accordingly, the Court dismisses Brooks's Louisiana Public Records Act claim against Blanchard without prejudice for lack of subject-matter jurisdiction.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Brooks's motion[83] for partial summary judgment is **DENIED** and Defendants' motion[84] for partial summary judgment is **GRANTED**. Brooks's Section 1983 false-arrest claim against Deputy Kahrs is **DISMISSED WITHOUT PREJUDICE** under *Heck*. *See Wilson*, 116 F.4th at 398 ("[A] *Heck* dismissal is a dismissal without prejudice." (quotation omitted)). Brooks's *Monell* claim against Sheriff Lopinto is **DISMISSED WITH PREJUDICE**. Brooks's Louisiana Public Records Act claim against Blanchard is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

New Orleans, Louisiana, this 20th day of March, 2025.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[83] ECF No. 59.
[84] ECF No. 63.

23